[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
In a four count complaint, the plaintiff seeks to impose a constructive trust on the real property and improvements owned by the defendant and located at and known as 80 Decatur Avenue, Guilford. He also seeks a partition of that real estate. In a third count, he pleads promissory estoppel while unjust enrichment is claimed in the fourth count.
The defendant has essentially denied the allegations of the complaint and interposed three special defenses to all four counts. These are that they do not state a claim for which they can afford relief, that the plaintiff comes to court with unclean hands, and the claim as to an interest in the real property violates the Statute of Frauds, C.G.S. § 52-550.
By way of counter-claim and setoff, the defendant has plead three counts, alleging breach of a settlement contract, breach of an oral agreement to re-pay loans, and unjust enrichment.
In a spirited trial which consumed the major part of seven days, the court heard nine witnesses and had marked into evidence 239 exhibits, many of which had numerous component parts — bundles of checks, receipts, and invoices for example.
This dispute evolved out of a relationship between these parties, the precise nature of which they do not agree upon. However, it is undisputed that they had a varied personal relationship over an approximate period of seven years. At times this could be described as intimate, and at one time or another, the plaintiff was the defendant's employer. They apparently loaned each other money, but initially, they were friends when the purchase and restoration of 80 Decatur Avenue was commenced.
At some point, the defendant occupied an apartment in the plaintiffs parent's residence and the plaintiff lived at Decatur Avenue at another time. A relative of the defendant who came from Texas east to help her in the house construction also worked at the plaintiffs business one summer.
The subject of this controversy is real property located in the town of CT Page 7684 Guilford at 80 Decatur Avenue. In 1995, the defendant learned of the availability of the Decatur Avenue property. The structure on the site was in a state of disrepair, but the defendant felt it had a potential if properly restored and "the price was right." Title was ultimately taken in the defendant's name and the tortuous path toward reconstruction was soon underway.
This dispute evolves around two issues: one, who did the actual physical work of restoration and who actually paid for it, and whether there was an agreement whereby the parties were to own the property jointly and share equally in the proceeds if it were sold.
The plaintiff claims to have done virtually all of the actual labor while the defendant denies this and produced witnesses who stated they never saw the plaintiff on the job. Other witnesses testified to work they did, thus rebutting the plaintiffs claims as to specific items. The defendant denies any agreement existed for joint ownership.
The confusing array of documents, claimed by each side to support its contention, is best addressed in the discussion of the complaint and counterclaims which follow.
Webster Bank was joined as a party defendant, apparently by virtue of its status as mortgagee of the subject real property.
 DISCUSSION I
Much of the evidence presented in this case was in the form of checks, receipts, invoices, and bank and credit card statements. Unfortunately, the parties rarely agreed on what these items represented and the court's attempt to reconcile the court testimony with the items produced was largely inconclusive.
In order for the plaintiff to prevail on any one of his four counts, he must first establish that he has advanced funds to or for the benefit of the defendant. And, since the defendant has offered numerous items to support her own claim that she has money coming from the plaintiff, credibility becomes a substantial factor in evaluating these claims.
Credibility in this case involves more than choosing between the plaintiff and the defendant. The plaintiffs case came in virtually unsupported and each side "scored" in negating portions of the claims of the other. CT Page 7685
When this occurs, the court must look to other evidence, the lack of evidence, and the existence of facts which are inconsistent with the claim advanced.
A.
In support of his claim that he is the rightful owner of a half of 80 Decatur Avenue, the plaintiff claimed to have worked constantly on virtually every aspect of the planning, demolition, restoring and completing of the project. This was a project that took about four years, making allowances for discrepancies in the telling.
The plaintiff supported this portion of his case with the testimony of his father who said he saw him working on the house in the very beginning doing carpentry on the interior and on the walk.
The defendant described the plaintiffs efforts as nominal, helping upon occasion for short periods of time, doing dump runs and loaning equipment. She also described two instances in which the plaintiff undertook projects on his own with unfortunate consequences to her. These involved the septic tank and the removal of ledge in the basement. The plaintiff offered no rebuttal to this criticism.
The defendant also offered the testimony of a friend and neighbor, Jodie Bill, who helped her with various chores on the property. At one stage of the project, she was on the premises at least five days a week and observed the defendant and Matt Martin at work. She saw nothing done by the plaintiff, though he occasionally stopped by with his parents in the course of taking them to lunch. He never said anything to her about owning the house.
Three relatives of the defendant also testified to having come to Connecticut to help her on the house project. They described work they had done — some of which the plaintiff claims he did. All three were in agreement that the plaintiff did no work and that his efforts were confined to doing some shopping and making suggestions.
One could argue that relatives of the plaintiff would be partial to her. However, these three witnesses impressed the court with their demeanor, responses to questions and explanations. And, what the court finds significant in light of this evidence is the plaintiffs failure to call any of the other workers who were identified by the defendant as having done work for her. This omission looms large when one is confronted with two contradictory versions of the same event.
The plaintiffs explanation for why he was not a party to the deed was CT Page 7686 that the defendant told him, and one must infer he believed her, that she was in a better position to get a mortgage in the future.
With his business experience in mind, one must question this explanation. Did he seriously believe that the plaintiff alone would have been a more attractive candidate for a mortgage than would the two of them? The court doubts this ever happened and that the statement represents an attempt to explain away the significance of his not being on the title.
B.
There are other problems with the plaintiffs proof, consisting of what may best be described as inconsistencies.
The court is skeptical of a claim which is totally lacking any written memorandum for support. The plaintiff was not a novice to the business world at the time these events took place as he was running his own business. He claims to have been involved as a partner or member of a joint venture. Yet, he never saw fit to have anything put in writing despite attending at least one closing and purportedly engaging in substantial negotiations. His failure is perplexing to say the least for a party who at trial presented years old cash register receipts for coffee and bagels — expenses he allegedly incurred to host persons who did work on the house.
Two mortgages of the premises were executed without the plaintiffs legal involvement and for an interest he claims stems from 1995, the first written "evidence" of it is the complaint in this law suit dated August 22, 2001.
In his complaint, (first count), in paragraphs 14-16, the plaintiff alleges he moved into the house in August of 1999, the parties ended their personal relationship shortly after that, the defendant asked him to leave, and in May 2000, he complied with that request.
The court finds that behavior inconsistent with that of a one-half owner.
The court also notes that in the course of his cross examination, the plaintiff conceded that the defendant paid a "substantial amount" of money, but no accounting occurred. This raises the question of how he arrived at the amount of his claim.
 C.
Though not a frequently raised issue in trials, the defendant has CT Page 7687 offered evidence on the plaintiffs reputation for truthfulness. Jodie Bill and Rosa Northan testified that he was not truthful, while Northan went a step further and said he twisted the truth and was a "manipulator." Ms. Northan was employed by the plaintiff for three years.
This testimony must also be considered by the court in its evaluation process.
 D.
The court next addresses the plaintiffs claim as to unjust enrichment, which is basically a claim for money owed. This is the aspect of the case which involves the voluminous paper trail referred to above and conflicting claims and explanations of the parties as to which checks were loans, repayments, advances for the house construction, and/or for personal use. Checks drawn on the plaintiffs business are mostly unlabelled as to their purpose and, incredibly, aside from the checks and some stubs, there are no ledgers, daily logs, or financial statements. Bank and credit card statements are insufficient to permit even an approximate accounting.
The picture is further clouded by the fact that the defendant was employed in the plaintiffs business. Payroll records were not kept, but the dates and amounts of some checks lend credence to the defendant's claim that they are for services rendered. The plaintiff, on the other hand, argues that the defendant drew numerous checks without authority and pocketed large sums.
In brief, we have loans by the plaintiff to the defendant, loans by the defendant to the plaintiff, wages, expenses, personal items which may be chargeable to either party, building expenses attributable to Decatur Avenue, building expenses the defendant claims are for the plaintiffs parent's properties, and a flurry of "repayments."
As the court pored over the pounds of documents comprising the exhibits in this case and attempted to reconcile them with its notes and the parties' briefs, the sad but unescapable conclusion reached was that the task is impossible. Any other conclusion reached as to this mass of paper would be speculation at best and, the court cannot and should not construct the plaintiff's case.
Lacking proper records and with so many questions raised about so many items, the court must conclude that the plaintiff has not sustained his burden on this count. CT Page 7688
It necessarily follows that the plaintiffs counterclaims to the defendant's counterclaims must also fail.
 II
The defendant has interposed several legal defenses to the plaintiffs claims, with various statutes of limitations presenting serious problems for the plaintiff.
Having failed to establish that a written agreement existed by which he was to be a half owner, the plaintiff runs afoul of the Statute of Frauds, C.G.S. § 52-550.
Even if he were to prove an oral agreement to convey a one half interest, that agreement must fail because C.G.S. § 52-581 imposes a three year statute of limitations on oral contracts. This property was acquired in 1995 and the plaintiff testified that he was a "partner" in the project from the beginning. His suit was brought in 2001.
The prayer for the imposition of a constructive trust requires more than allegations that the parties had an oral agreement and a personal relationship. The plaintiff has offered no evidence that the defendant was guilty of fraud, coercion, deceit, etc. (Citations omitted). Thus, even if he had proven his unjust enrichment claim, this remedy would not be available.
Having failed to prove an ownership interest in the real property, he is not entitled to a partition.
 CONCLUSION AS TO THE COMPLAINT
1. Judgment may enter for the defendant Webster Bank, the plaintiff having failed to state a cause of action nor having offered evidence as to that party.
2. Judgment may enter for the defendant on counts 1-4.
3. Judgment may enter for the defendant on the plaintiffs counterclaims.
 III
The defendant has interposed a three count counterclaim. Counts two and three involve the financial transactions between he parties which are the subject of the plaintiffs claim for unjust enrichment. As such, they CT Page 7689 involve the same difficulties enunciated by the court in evaluating the plaintiffs case.
The court concludes that the defendant has not sustained her burden of proof on these two counts and judgment may enter for the plaintiff.
The first count of her counterclaim is based on a check dated July 6, 2000, and drawn by the plaintiff in the mount of $25,000.
According to the defendant, on that date, she and the plaintiff met to discuss a windup of their business relationship. She and the plaintiff did some computations and the defendant concluded she was owed about $50,000. An agreement was reached calling for the plaintiff to pay the sum of $25,000 and the plaintiff issued her his check for that amount plus interest.
The plaintiffs testimony as to this payment is curious, to say the least. He stated that he drew the check as payment for work on the upper deck of the Decatur Avenue property. He stopped payment because the defendant "had been behaving erratically, checks were missing, and property was missing." Why these concerns caused him to stop payment on July 7 but did not discourage him on July 6 was not explained.
The defendant offered evidence to support her position, first that she had paid for the deck in a different amount. Then Rosa Northan testified that she had been present on July 6 and heard the plaintiff and the defendant discussing the settlement. Ms. Northan also related the defendant's role in running the plaintiffs business and loaning him money. She was of the opinion that the plaintiff was owed $50 to $60,000. She also addressed the issue raised by the plaintiff that the defendant drew checks without authority, stating that the defendant did not use the "quick books" check system the plaintiff employed and did not know how to use it.
The defendant also offered the testimony of Lynn Stewart, her niece, who had been employed by the plaintiff for the sunnier. She said she was present on July 6, when she heard the plaintiff and the defendant discussing the settlement and saw the plaintiff give her the check.
On the basis of this evidence, the court concludes that the defendant has proven the existence of a settlement agreement and judgment may enter for defendant, Pamela Strong (NKA Pamela Province) in the amount of $25,000 plus interest from July 6, 2000 to date at the rate of 10 percent per annum in the amount of $2,342.45.
Anthony V. DeMayo Judge Trial Referee CT Page 7690